UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CHEYNE SUKER, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO.: 3:23-cv-609 |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| KRISPY KREME DOUGHNUT ) | |
| CORPORATION, ) | |
| ) | |
| Defendant, ) | |

NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, to correct unlawful employment practices based on religion and provide appropriate relief to Plaintiff Cheyne Suker. As alleged with greater particularity below, Defendant violated Title VII when it discriminated against Plaintiff by refusing to accommodate his sincerely held religious beliefs and terminated his employment.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1332, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the causes of action arising under North Carolina law are authorized and instituted pursuant to 28 U.S.C. § 1367(a).

2. The employment practices alleged to be unlawful were committed within the state of North Carolina and within the jurisdiction of the United States District Court for the Western District of North Carolina.

## PARTIES

3. Plaintiff Cheyne Suker is a citizen and resident of Lancaster County, South Carolina.

4. At all relevant times, Defendant Krispy Kreme Doughnut Corporation (Krispy Kreme), has continuously been doing business in the State of North Carolina and in Mecklenburg County, North Carolina, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant has been a covered entity under Title VII.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, and within 180 days of Defendant's termination of his employment, Plaintiff filed a charge (number 430-2022-00920) with the Equal Employment Opportunity Commission (EEOC) alleging violations of Title VII by Defendant.

8. On June 28, 2023, the EEOC issued to Plaintiff a Letter of Determination and Notice of Rights (Right to Sue) (sent to Plaintiff and received on June 29, 2023) in which the EEOC notified Plaintiff that it was closing its investigation on his charge without making a determination of the likelihood of whether further investigation would establish violations of the statute, and in which the EEOC notified Plaintiff of his Right to Sue on his charge under federal

law.  The Right to Sue notice is attached hereto as **Attachment A**, and is adopted, alleged and incorporated herein by reference as if fully set forth.

9.  Plaintiff having exhausted his administrative remedies with the EEOC, all conditions precedent to the institution of this lawsuit have been fulfilled.

FACTS

10.  Plaintiff was hired by Defendant on September 28, 2020, as the Senior Director of In Shop Technology & eCommerce, one of five such Senior Directors who, along with Ben Hall, Defendant's Chief Information Officer (CIO), made up Defendant's Internal Technology Leadership Team (IT Leadership Team); and although Plaintiff had an office at Defendant's Support Center in Charlotte, North Carolina, he worked nearly exclusively from home.

11.  On September 23, 2021 Defendant announced that it was instituting a COVID-19 Mandatory Vaccination Policy (Defendant's Vaccination Mandate or Vaccination Mandate) requiring employees who were in frequent contact with other employees to submit to being injected with the COVID-19 Vaccine (Vaccine) by November 30, 2021 and to provide proof to Defendant's Human Resources Department (HR) of having done so.

12.  At or near the issuance of the Vaccination Mandate, Defendant announced that employees would be required to begin working more often at the Support Center rather than nearly exclusively remotely.

13.  Defendant, which has thousands of employees, is in the business of making and selling doughnuts and other items to the public, and at all times relevant to this action Defendant maintained retail shops (Shops) where it made and sold its products to the general public.

14. Employees who worked in Defendant's Shops regularly interacted in close contact with the general public and with other employees, but were not subject to the Vaccine Mandate – not required to submit to being injected with the Vaccine.

15. Plaintiff submitted a Religious Accommodation Request Form (Accommodation Request) to Defendant's HR on October 5, 2021 in which he requested an accommodation from the Vaccination Mandate on grounds that taking the Vaccine would require him to violate his sincerely held religious beliefs as a Catholic against using "any product that takes its origin in abortion;" and in the Accommodation Request Plaintiff specifically asked that his accommodation be exemption from taking the Vaccine. Plaintiff's Accommodation Request is attached hereto as **Attachment B**, and is adopted, alleged and incorporated herein by reference as if fully set forth.

16. In his Accommodation Request, Plaintiff sought exemption from being required to be injected with the Vaccine, stating his religious convictions against abortion and aborted fetal tissue in medicine, stressing that the Vaccines were developed and/or tested using cell lines derived from aborted fetuses, and making it abundantly clear that allowing himself to be injected with such a Vaccine would violate his sincerely held religious beliefs. He was required to and did certify that his religious beliefs were sincere when he submitted his Accommodation Request, but Defendant never acknowledged (nor even undertook a duty to reasonably consider, upon information and belief) the validity and/or sincerity of Plaintiff's religious convictions.

17. Defendant created a vaccination status spreadsheet (Vaccination Status List), which listed all members of the IT Department (including contractors and consultants), and included each member's vaccination status and whether he or she had requested a religious and/or medical

accommodation; and this Vaccination Status List was distributed to all five members of the IT Leadership Team and to CIO Ben Hall, who supervised the IT Leadership Team.

18. Plaintiff was listed on the Vaccination Status List, which indicated that he was not vaccinated and that he had submitted a religious Accommodation Request.

19. Plaintiff supervised a team of IT Department employees, with whom he communicated remotely, and after the Vaccination Mandate was announced, he was responsible for determining which members of his team had or planned to comply with the Vaccine Mandate, and to make note thereof of the Vaccination Status List.

20. Also as part of his duties as Senior Director, Plaintiff conversed remotely with the other four Senior Directors; and during conversations with other Senior Directors regarding the Vaccination Status List, Plaintiff confirmed that he had submitted a religious accommodation request in opposition to the Vaccination Mandate.

21. Plaintiff met remotely with Mr. Hall every Wednesday, and after the Vaccination Status List was circulated, they routinely discussed Plaintiff's team's compliance with the Vaccination Mandate. In one such meeting (within approximately a week after Plaintiff submitted his Accommodation Request), Mr. Hall told Plaintiff that anyone who spoke out against the Vaccination Mandate or was not quiet about opposing it would be put on administrative leave until the November 30 and then fired.

22. Without making a determination as to whether Plaintiff had stated a sincerely held religious belief, Defendant notified Plaintiff that his Accommodation Request had been denied in an October 14, 2021 email to him from Greg Thompson, the Project Leader of an Accommodation Review Committee set up by Defendant. In that email, informed Plaintiff that "an essential function of your position is to perform work onsite at Krispy Kreme's Support

Center and to have close, regular contact with other Krispy Kremers as well as potentially contractors, vendors and other Support Centers visitors, remaining unvaccinated poses a substantial risk to the health and safety of you and others"; and on that basis, Mr. Thompson notified Plaintiff that his employment would be terminated if he remained unvaccinated as of November 30, 2021.

23. The Defendant's Support Center was immediately adjacent to (shared a common wall with) one of Defendant's Shops, and employees from that adjacent Shop (who were exempt from the Vaccination Mandate) routinely brought doughnuts to the Support Center and had "close, regular contact" with the employees who worked there.

24. Shortly after receiving the denial of his Accommodation Request, Greg Thompson spoke to the Plaintiff in a telephone conversation in which Plaintiff was informed that he had three options: 1) get vaccinate by November 30, 2021, 2) prepare to be fired on December 1, 2021, or 3) appeal the denial. Mr. Thompson indicated that Plaintiff could initiate the appeal simply by indicating that he wanted to do so in their conversation, and Plaintiff did so.

25. Plaintiff's Accommodation Request was appealed to Terri Zandhuis, Defendant's Chief People Officer; however, no further input was requested from Plaintiff as part of his appeal and he was never offered an opportunity to provide anything to further support of his appeal and/or to indicate accommodations to which he might be amendable, nor did Ms. Zandhuis contact Plaintiff to discuss the basis for his appeal or offer him an opportunity to discuss his appeal or his Accommodation Request with her.

26. On or about November 15, 2021, in anticipation of being fired on December 1, Plaintiff made a post on social media venue LinkedIn that he was likely soon to be in need of work, indicating: "unfortunately my days as a Krispy Kreme employee & brand ambassador are

nearing an unwanted end. I loved this job & company but things took an unexpected & unfortunate turn following recent management mandates. If you're a brand that's looking to rebuild your eCommerce environment or an agency that's helping clients do the same, this digital delivery leader will likely be available soon."

27. Early in the morning after Plaintiff's LinkedIn post, in a video call with Mr. Hall and Lori Suess, Defendant's Director and HR Business Partner, Plaintiff was told that he had been placed on administrative leave, and immediately after that video call, Plaintiff was denied all further access to all Defendant's internal technologies, including email, messaging, and team databases.

28. On November 30, Terri Zandhuis informed Plaintiff that his appeal from the denial of his religious Accommodation Request was denied.

29. Plaintiff did not get the Vaccine because to do so would violate his sincerely held religious beliefs, and Defendant terminated Plaintiff's employment on December 1, 2021 for failure to get the Vaccine.

30. Upon information and belief, Nancy Tran, who worked in the same office with Mr. Suker, was granted an accommodation of her objection to the Vaccination Mandate based upon her sincerely held religious beliefs. Ms. Tran was allowed to continue to work from home. She was required to work in the office at times, however, and during those times she was simply required to wear a mask. Ms. Tran never had to take the Vaccine. She was never fired, and she continues to work in the same office where Mr. Suker worked. In fact, Ms. Tran was even promoted to a management role at some point following her accommodation.

31. Defendant never inquired of Plaintiff or attempted to confer with him as to whether something other than exemption from being injected with the Vaccine might serve to

accommodate his sincerely held religious beliefs, nor was any interactive process to explore the possibility of such an accommodation ever offered to him, although Plaintiff was always open to other accommodations, such as wearing a mask and submitting to weekly testing for COVID-19, which (upon information and belief) other employees were granted to accommodate either religious beliefs or medical conditions.

32. Other than denying Plaintiff's Accommodation Request and his appeal, Defendant never contacted Plaintiff or made any effort to accommodate his sincerely held religious beliefs, nor did Defendant ask for any additional information while Plaintiff's Accommodation Request and appeal were pending.

33. Defendant paid Plaintiff a salary as employee as well as providing him with substantial benefits, including (but not limited to) health insurance, annual bonuses as part of a bonus plan in which he shared based upon company performance, and substantial stock options; and as a direct consequence of the loss of his job, Plaintiff has suffered economic losses in the form of lost wages, lost benefits, and emotional distress - all of which he continues to suffer.

### FIRST CAUSE OF ACTION
### FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION
### Violation of Title VII of the Civil Rights Act of 1964
(42 U.S.C § 2000e)

34. The averments and/or allegations contained hitherto in this Complaint, in particular paragraphs 1 - 33, are adopted, re-alleged, and incorporated herein by reference as if fully set forth.

35. Defendant engaged in unlawful employment practices in violation of sections 701(j) and 703(a) of Title VII, 42 U.S.C. §§ 2000e(j) and 2000e-2(a), particularly in that Defendant failed or refused to provide Plaintiff with a reasonable accommodation of his sincerely held religious beliefs.

36. Plaintiff is a Catholic Christian who believes that the use of vaccines developed and/or tested using cell lines derived from aborted fetuses violates the teachings and instructions of his religion.

37. Defendant's requirement that Plaintiff receive the Vaccine conflicted with his sincerely held religious beliefs.

38. Defendant knew that Plaintiff's religious beliefs conflicted with its requirement that he submit to being injected with the Vaccine.

39. Defendant took adverse employment action against Plaintiff because he failed to comply with its requirement that he submit to being injected with the Vaccine.

40. The effect of the practices complained of in paragraphs 10-29 above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his religious beliefs.

41. The unlawful employment practices complained of in paragraphs 10-29 above were and are intentional.

42. The unlawful employment practices complained of in paragraphs 12-47 above were done with malice or reckless indifference to the Plaintiff's federally protected rights.

### SECOND CAUSE OF ACTION
### RETALIATION ON THE BASIS OF RELIGION
### Violation of Title VII of the Civil Rights Act of 1964
(42 U.S.C § 2000e)

43. The averments and/or allegations contained hitherto in this Complaint, in particular paragraphs 1 - 42, are adopted, re-alleged, and incorporated herein by reference as if fully set forth.

44. Defendant fired Plaintiff in retaliation for engaging in a protected activity by making it known publicly that he was requesting a religious accommodation in opposition to Defendant's Vaccination Mandate in violation of 42 U.S.C. § 2000e-3(a).

45. Plaintiff is a member of a protected class, Catholic engaging in a protected activity, expressing opposition to Defendant's Vaccination Mandate based upon sincerely held religious beliefs.

46. Plaintiff was qualified for his job and his job performance was satisfactory. In fact, he was an exemplary employee, who was highly regarded by his fellow members of the IT Leadership Team.

47. Plaintiff was fired.

48. All the Defendant's employees who worked in the Shops, who were not members of the same protected class (Catholic overtly engaging in a protected activity), were not fired under similar circumstances. Although the employees in the Shops worked even more closely with each other and with the general public, and were a greater risk of spreading COVID-19 than Plaintiff by Defendant's own rationale, they were not subject to the Vaccination Mandate and not fired for remaining unvaccinated.

49. Plaintiff asserted his right to reasonable accommodation based upon his sincerely held religious beliefs, and he made his opinion clear to the public that he was likely going to be fired for doing so.

50. Defendant did not even attempt to reasonably accommodate Plaintiff's sincerely held religious beliefs, but put him on paid leave, denied him access to company email and internal communications, and fired him after a *pro forma* appeal process in retaliation for speaking out in opposition to the Vaccination Mandate publicly, based upon his religious convictions.

51. On December 14, 2022, Plaintiff sought reinstatement to his job with Defendant through the process of bringing his charge before the EEOC, citing Center For Disease Control (CDC) findings that the unvaccinated posed no greater risk of spreading COVID-19 than the

vaccinated, but Defendant never responded to that request, further retaliating against Plaintiff for bringing his charge of religious discrimination before the EEOC in violation of 42 U.S.C. § 2000e-3(a).

52. Plaintiff would have received his bonuses and his stock options but for Defendant's retaliation against him, firing him for speaking out in opposition to the Vaccination Mandate publicly based upon his religious convictions and refusing to rehire him after he filed a charge with the EEOC.

53. Plaintiff suffered significant damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, lost bonuses, lost stock options, other financial costs, emotional distress, and the cost of bringing this action.

54. Defendant intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference.

55. Plaintiff is entitled to reinstatement, back pay, front pay, compensatory damages, punitive damages, attorney's fees, and the costs of pursuing this action.

### THIRD CAUSE OF ACTION
### WRONGFUL DISCHARGE IN VIOLATION OF STATE PUBLIC POLICY
N.C.G.S. § 143-422.2

56. The averments and/or allegations contained hitherto in this Complaint, in particular paragraphs 1 - 55, are adopted, re-alleged, and incorporated herein by reference as if fully set forth.

57. Plaintiff was an at will employee of Defendant.

58. Although Plaintiff informed Defendant that his sincerely held religious beliefs prevented him from complying with Defendant's requirement that he submit himself to be injected with the Vaccine as set forth herein, Defendant never addressed, acknowledged (nor even

undertook a duty to reasonably consider, upon information and belief) the validity and/or sincerity of Plaintiff's religious convictions.

59. Defendant wrongfully discharged Plaintiff without making any effort to discuss the profundity of his religious convictions against being injected with the Vaccine with him and without making any attempt to determine how he might be able to otherwise address or satisfy the public safety concerns Defendant allegedly attempted to address by instituting the Vaccination Mandate, although the Defendant's Shop workers were not required to be injected with the Vaccine.

60. In his Adjudicator's Determination of August 19, 2022, James Futrell, Appeals Referee of the North Carolina Department of Commerce Division of Employment Security, determined that Plaintiff was entitled to unemployment insurance benefits, arising out of the Defendant's December 1, 2021 termination of his employment, because Defendant did not discharge Plaintiff for misconduct connected with work pursuant to N.C.G.S. § 96-14.6; and Appeals Referee Futrell based his determination on the following reasoning, which Plaintiff alleges:

> Employer has the responsibility to show that Claimant was discharged for misconduct within the meaning of the law. Claimant was terminated for failing to receive the COVID-19 vaccination. Employer denied Claimant's religious exemption request without addressing the religious request or providing alternatives to the COVID-19 vaccine. In conclusion, Claimant WAS NOT discharged for misconduct connected with the work.

Appeals Referee Futrell's Decision is attached hereto as **Exhibit C** and is incorporated herein by reference.

61. Defendant wrongfully discharged Plaintiff in violation of North Carolina public policy which prohibits discrimination and retaliation in employment on account of religion pursuant to N.C.G.S. § 143-422.2, particularly in light of Defendant's violations of federal and state law as set forth herein.

62. Plaintiff suffered substantial injury and damages both economic and emotional which were directly caused by Defendant's unlawful religious discrimination and retaliation as set forth herein, which damages were in the form of lost wages, social security pension, benefits, salary, bonuses (particularly his 2021 bonus which was to be paid based upon company performance and part of the benefits of his employment and/or compensation arising out of his employment), vacation pay, lost or unrealized stock options, and/or other compensation/benefits due him as a result of his employment relationship with Defendant.

63. As a further direct and proximate result of said wrongful discharge and unlawful employment practices, Plaintiff has suffered the indignities of retaliation, humiliation, embarrassment, mental suffering and/or emotional distress.

64. As a further direct result of his wrongful discharge and Defendant's unlawful employment practices, Plaintiff has been damaged in his ability to support himself and his family, harm to his employability and earning capacity, painful embarrassment among friends and co-workers, damage to his good reputation, and disruption of his personal life, which included his long term employment with Defendant.

65. As a result of his wrongful discharge, Plaintiff has suffered damages in an amount in excess of $25,000.00.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF WAGE AND HOUR ACT**
N.C.G.S. § 95-25.25.1 et seq

66. The averments and/or allegations contained hitherto in this Complaint, in particular paragraphs 1 - 65, are adopted, re-alleged, and incorporated herein by reference as if fully set forth.

67. Defendant was Plaintiff's employer as defined by Chapter 95 of the North Carolina General Statutes, the "Wage and Hour Act", N.C.G.S. § 95-25.2(5).

68. Defendant violated the provisions of the applicable laws under the Wage and Hour Act by failing and refusing to properly calculate and pay wages to Plaintiff in the form of accrued vacation time, as well as promised incentive payments ("wages based on bonuses, commissions or other forms of calculation") as defined by the Wage & Hour Act of North Carolina pursuant to N.C.G.S. § 95-25.7 and 95-25.12, particularly in the case of Plaintiff's unpaid bonus for 2021, which was 20% of his salary and based upon company performance, and in accordance with Defendant's representations and policies, procedures and practices of Defendant.

69. As a result of the violations of the Wage and Hour Act (which were not made in good faith and were known by Defendant to be violations), Defendant is liable to Plaintiff as an employee affected in the amount of his unpaid wages, unpaid vacation time, unrealized stock options (upon information and belief), and/or amounts due under the applicable law (including incentive payments and other compensation for labor or services rendered by Plaintiff as determined on a time, task, piece, job, day, commission, or other basis of calculation), as the case may be, plus interest at the legal rate set forth in N.C.G.S. § 24-1, from the date each amount first came due, as well as liquidated damages (in an amount equal to the amount found to be due), plus costs and attorney's fees, as allowed by N.C.G.S. § 95-25.22.

<u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff respectfully prays that the Court:

1. Order Defendant to make Plaintiff whole by providing him appropriate backpay with prejudgment interest, in amounts in excess of $75,000.00 to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay;

2. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of herein in amounts to be determined at trial;

3. Order Defendant to make Plaintiff whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial;

4. Order Defendant to pay Plaintiff an amount in excess of $25,000.00 for violations of North Carolina law, together with interest pursuant to N.C.G.S. § 24-1;

5. Order Defendant to pay Plaintiff punitive damages if allowed by law;

6. Award Plaintiff his costs of this action, including attorney's fees; and

7. Grant Plaintiff such further relief as the Court deems just, equitable and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised in his Complaint.

Respectfully submitted this the 26th day of September, 2023.

PACIFIC JUSTICE INSTITUTE

/s/ Adam C. Draper
Adam C. Draper
Attorney for Plaintiff
NC State Bar # 16612
Pacific Justice Institute
PO Box 20454

Winston Salem, NC  27120
Telephone:  (743) 219-1960
Facsimile:   (336) 765-5725
Email:  adraper@pji.org

**VERIFICATION OF PLAINTIFF CHEYNE SUKER**

I, Cheyne Suker, am the Plaintiff in the above-captioned matter. I have read the Foregoing Complaint. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.  I declare under penalty of perjury, under the laws of the United States and the State of North Carolina, that the foregoing is true and correct.

       This the 26th day of September 2023.

       /s/ Cheyne Suker
       Cheyne Suker